Good morning and may it please the court. I'm happy to answer questions the court has about any subject, but I'd like to lead off with the threshold issue of subject matter jurisdiction. We've offered three independent reasons why this case should not have been removed from state court to federal court. That the complaint does not necessarily raise federal issues, that any federal issues that were raised are not substantial to the federal system as a whole. And then the last factor is the sort of prudential veto that there would be a disruption to the state federal balance if all of these cases about medical device liability were to find their way into federal court. Before talking about the specifics of any of these, I just want to highlight some of the big picture concerns that drive the doctrine in this area. It is well settled that removal jurisdictions should be construed very narrowly and any doubt should be resolved in favor of a remand. And that is because fundamentally federal courts trust state courts to adjudicate their cases, including cases that raise issues of federal law. A particularly instructive decision is the Supreme Court's decision in the Franchise Tax Board of California case where the court says expressly that even if a federal defense appears on the face of the complaint, even if that defense is going to be the only issue anybody ever talks about in the case, that's not enough to get you federal jurisdiction. And that really I think informs how you ought to look at the claims in this case. These state law claims all filed in North Carolina also plead violations of federal law. But they do so overwhelmingly to anticipate a federal preemption defense because everybody knows that defense is coming in any case involving a medical device. We have cited multiple controlling precedents saying that if you have other theories of negligence that don't depend on federal law, which of course we do here because we have alleged violations of parallel state law duties, the complaint doesn't necessarily raise a federal jurisdiction. So there are two answers to this argument. The first one is, well, look, you're inevitably going to have to interpret federal law. But this just loops back on the Franchise Tax Board point. The only reason you're going to have to interpret federal law is because they have a preemption defense. But for that defense, you wouldn't be doing it. And we know from the Supreme Court's precedents, that's not enough to create federal jurisdiction. So your position is that your cases were filed in North Carolina law and they are running parallel to federal provisions. And so there's no where your case arises under federal law. That's correct. We can get, to put it in the words that this court and the Supreme Court have used, we can get all the relief we're looking for without you ever having to, without the court, the trial court ever having to interpret federal law. And think of this hypothetical just to smooth it out. If they waive their preemption defense, are there going to be discussions of federal law in this case? But for that one paragraph that I talked about, the answer is no. Those are only there because they're raising this defense. As to those issues, like necessarily raised, actually disputed, etc. I read them in the conjecture. Is that correct? If we defeat, so the way the test works is there are three pieces first. Necessarily raised, actually disputed, and substantial to the federal system as a whole. If all of those are met, then you could have federal jurisdiction. But there is also a prudential veto power over federal jurisdiction, which arises when exercising federal jurisdiction would substantially disrupt the balance that Congress anticipated between state and federal courts. And that in this case is a very important point. As we've noted, the rule that Bayer is asking you to adopt would bring in a tremendous number of cases. Even if we were only talking about this birth control device, there are already more than 10,000 cases winding their way through the state court systems that could be brought into federal court. And of course, they've urged you to adopt this rule for all class three medical devices that undergo premarket approval, which would mean all class three medical devices prospectively. And honestly, there is no clean way to cabinet to class three medical devices. It would not be long before defendants were talking about class two medical devices, before they were talking about other products that are also regulated by federal law. At a minimum, the lack of any bright lines that would allow you to cabin this would lead to years of collateral litigation about federal jurisdiction. And then ultimately would either lead to a bunch of garden variety products liability claims winding their way into federal court that aren't here now. Or, and then, you know, ultimately making their way here. And I just want to make it clear that there is no reason to do this. Because to the extent Bayer has a point that there are some federal questions in these cases, the Supreme Court has made it very clear. We trust state courts to adjudicate those. And ultimately, the Supreme Court can settle any errors by reviewing federal issues that arise in state cases. If there are any questions about any aspect of our position, I would love to handle them. But I'm also mindful of the court's time. Can I ask you about the negligence per se allegations? Sure thing. So you say that's just sort of an alternative theory. That's correct. I mean, is that the, why is that the right way to define claim for these purposes? Yeah. I mean, how do we know that we're supposed to look that broadly? Sure. So there, I'll start with controlling precedent. The best case to look at is the Christensen v. Colt Industries case. So this is a Supreme Court case that is about whether an issue of patent law was necessarily raised which would have conferred jurisdiction on the federal circuit instead of the regional circuit. And it was an antitrust case. And the plaintiff had brought two kinds of claims. A monopolization claim under Section 2 of the Sherman Act and a global boycott, a group boycott claim under Section 1. Under both claims, the theory that the plaintiff principally proceeded on was, these patents are invalid and so your attempts to restrain our trade are unlawful. Right? And everyone agreed, okay, that theory raises an issue of patent law. But the plaintiff had also alleged in the complaint that they received permission from the defendants to go ahead and use this intellectual property and so therefore the patents didn't matter. And what the Supreme Court said was, these are two different theories of monopolization or two different theories of group boycott. They are not separate claims. Right? Even though they rested on different facts. Right? One set of facts being the facts about the validity of the patent. The other set of facts being the facts about whether consent had been given. Totally unrelated sets of facts. But they were grouped under Section 2 of the Sherman Act and Section 1 of the Sherman Act. And those were the claims in the well-pleaded complaint. Does it matter how the complaint is pled? What if negligence per se had been a separate count of the complaint? Would that change the analysis? Because is that what was going on in Merrildale? I don't. So in Merrildale, yeah, it was pleaded as a separate count. And the Court didn't really reach the question whether it was necessarily raised. It sort of assumed it. There's a footnote at the end saying, you know, there's an argument out here that, well, there's lots of ways you can find negligence. So this isn't raised. And I think they rejected that. Yeah. I mean, there is an argument for doing it that way because this whole idea stems from the well-pleaded complaint rule, which makes the plaintiff the master of the complaint. So there is a rational reason to do it that way. It does seem a little bit, you know, weird that if it was just segregated out that way. But, yeah, there is certainly an argument rooted in the doctrine for doing it that way. The other case on point that is controlling precedent that specifically speaks to negligence per se is the Mulcahy case. And so this is a case that we cited, which specifically is about negligence per se for violation of federal statutes and then garden variety negligence. And this Court says, you know, that's a different theory of negligence and not a separate one. And that case was reaffirmed in the Dixon versus Coburg-Derry case, an en banc decision of this Court, and it's been relied on subsequently. So I think there is a lot of controlling precedent that says when, as here, the complaint groups negligence per se under the aegis of a negligence count at a minimum, then you're okay. I actually think the argument could be broader. It could be narrower. Whatever. But it doesn't matter. You don't have to reach it here. Would this be a correct statement? And if any legal theory underlying that claim does not necessarily raise a federal issue, the claim itself does not? That's correct. That's what it means to necessarily raise an issue, is that every theory underlying the claim must raise the federal issue. That's absolutely right. And in your view, it wouldn't matter anyway, because even if it's necessarily raised, you think it fails under the... Yeah, we have two other independent bases for denying subject matter jurisdiction in this case. I'm just curious. What do you think is the strongest argument for why there shouldn't be subject matter jurisdiction? Why there should not be? So I think under the clearest argument under this Court's precedence, and especially in light of there's a Northern District of California case, San Gimeno, which we cited, where the complaint is almost verbatim, our complaint, and it finds no necessarily raised, that's the easy one. I think that whether it's substantial to the federal system as a whole, you know, the other side has an argument, and I won't deny that it has a little bit of force that says, these are heavily regulated federal products. Maybe it would matter, you know, to the federal system. I think that argument is wrong. I think it's clearly wrong under the controlling precedence following Gunn, the Supreme Court's holding about what it means to be substantial to the federal system as a whole. But you can make policy arguments about the need for uniformity. I don't think those arguments weigh in favor of federal jurisdiction. I think, you know, but they're real. There is a need for uniformity in this area, right? But I think that those, you know, so that probably is the argument that I would say is the one that's the most contentious. The last argument about the prudential veto, I think that's an incredibly strong argument for us. Congress has recognized for decades now that there's going to be medical device litigation in state court, right? That's why the express preemption provision exists, and there's no federal cause of action, is because they know these cases are going to go forward. And since 2008, when the Supreme Court decided regal, and even before then, these cases were being brought subject to federal substantive preemption. It was understood state courts were going to apply that preemption defense, and that's how this was going to work. To shift all of that litigation to federal courts would be remarkably disruptive. And they've tried to minimize it, but I don't think they have any clean way of doing so. We, you know, as we pointed out in the reply brief, we think the math they did on this is wrong, but even if you don't look at it just quantitatively, even if you look at just this device, we're talking about thousands and thousands of cases, and that is a big deal. And we think that would be, that's exactly, by the way, the type of justification that led the court, Supreme Court, to turn away federal jurisdiction in Merrill Dow, right, which was pharmaceuticals. We're talking about claims that are very, very similar to the types of claims we're talking about here. The only real difference that Bayer has been able to identify is the existence of this express preemption rule, but that doesn't have anything to do with the number of cases or how disruptive it would be. It would be a lot of cases. And as I said, it could easily metastasize to the point where we're talking about Class II devices or other federally regulated products, too, and I don't think we want to open that door. So, yeah, I would order the arguments necessarily raised, veto, and then substantial. But I think they're all good, actually. I quite like our arguments. All right, anything else? All right, thank you. You have some time to go. Yeah, sure. Maylee. Hi, it's the court, Erica Maylee, representing the Bayer District Defendants. The decision below should be affirmed, the district court correctly held, that there's federal question jurisdiction under the Grable standard because the plaintiff's state law claims necessarily raise substantial questions of federal law that sensibly belong in a federal court, and also correctly held that those claims are preempted by federal law. To start with the jurisdictional issue, again, there's four prongs to the Grable standard, and the plaintiffs agree that the second prong is met here and that the federal questions are actually disputed between the parties. But the district court correctly held that the remaining three prongs are met as well. First, the complaint does necessarily raise federal questions on its face. Indeed, the face of the complaint is replete with allegations that Bayer violated federal law. May I ask you, this is my real concern about the case. It just seems like your argument is sort of an end run around the rule that a federal preemption question is not enough to get you into federal court. There's a difference between preemption and jurisdiction. And your position seems to be, look, it's up to the plaintiff to anticipate a preemption defense in the complaint. That's going to mean, under this line of Supreme Court cases, you have to show a parallel federal duty. And when you do that, you have necessarily raised these federal questions in federal court. But then that's going to be true of every preemption case. We agree, Judge Harris, that a preemption defense does not necessarily raise a federal question under Grable. And we agree that that includes when a federal preemption defense is anticipated in a complaint. But that's obviously, I mean, you say it's replete with allusions to federal law, but just reading the complaint as drafted, I mean, those are all there to anticipate this preemption. That's where we disagree. They're doing more than simply anticipating a preemption defense. And we think that's clearest with a claim that Bayer failed to report adverse events about the eShore device to the FDA, which is, of course, a federal agency. I read the, you know, that just seems like they're trying to get in line with that Ninth Circuit decision in Stenger that says you can plead it that way. That's that narrow way that you avoid preemption. Well, I think you have to draw a distinction between the motivation for what claims they chose to bring and the question of what claims are brought on the face of the well-pleaded complaint. Now, the motivation may well be because they know that a direct failure to warn claims saying your labeling is inadequate is preempted by federal law.  But that's not the question. The question is just do the claims as pled necessarily raise a question of federal law? And the answer to that is yes. And to take... Is that different from any sort of parallel federal claim that you're raising in order to anticipate a defense? Because on their face, they do raise federal questions. Yes, it is different because you can look at at least two of the claims here. Raise a federal question in the exact same way that the negligence per se, which they admit necessarily raises a federal question, does. And that is they are pleading a violation of federal law in order to satisfy an element of the state law claim. So take, again, this claim that Bayer failed to report adverse events to the FDA. And they're saying therefore they were injured and therefore there's liability under North Carolina law. But there is no way that they can establish that liability under North Carolina law without demonstrating a violation of federal law. And that is because the duty to report adverse events is entirely created and defined by federal regulations. And you can't have an independent North Carolina standard that governs what information must be given to a federal regulatory agency. I'm just thinking of the Stenger case where you could have state law that says you can satisfy your duty to warn by notifying the FDA. So now you're pleading they didn't notify the FDA to show that you have violated that state law duty of care. Well, that goes to a somewhat separate question. And the question is, what creates the cause of action? And we're not disputing here that the causes of action they have pled are causes of action under state law. We do dispute that there is, in fact, a cause of action under North Carolina law for this. But it is pled as a North Carolina cause of action. But that simply means we're in the Grable test. And all of the cases under the Grable test recognize that if you plead a violation of federal law to establish an element of a state law claim, that means that a federal question is necessarily raised. And that includes a number of the cases that the plaintiffs themselves are relying on. Cases such as Empire Health Choice, Gun v. Nitton, find a federal question necessarily raised for precisely this reason. Because it is embedded into an element of a state law cause of action. Why can't a state trial court handle the question? You have a pair of other claims there, and all of a sudden they move a little outside of the tracks. Why can't a state court take care of that? Sure, Judge Flake. State courts obviously can and do consider questions of federal preemption. But the Supreme Court has also recognized that there are areas where a federal court's greater expertise in federal law and where a federal court's greater uniformity within that federal system are going to be of benefit to achieving federal objectives. And that is such an area here. Because you've got unique interests going on with this class of pre-market approved medical devices, which is a very narrow class of devices. And particularly with the particular types of claims that are pled in this complaint, you have uniquely federal interests. Because the claims really go to the heart of a relationship between the federal agency and the entities it's regulating. And in that area, a court ruling on the meaning of these federal regulations, such as the adverse event reporting regulation, could have a real impact on how the FDA does its job to regulate this narrow category of medical devices. Aren't the claims, as the plaintiff has pledged in this case, virtually identical to complaints that courts all over the country have remanded on exactly this question? Yes, there are a number of other cases concerning the Escher device with similar claims that the courts have remanded. I would note that nearly all of those decisions go on the substantiality prong of the Grable test. Indeed, a number of them do in fact find that federal questions are necessarily raised by these complaints. That includes Dorman and Johnson. And as to the substantiality prong, the main error that you see in those decisions is a misreading of Merrill Dow. They read Merrill Dow as saying, if you don't have a federal cause of action and you don't have complete preemption of federal law, then you don't have a substantial federal question. But that's a reading of Merrill Dow that was rejected in Grable. And Grable expressly holds you don't have to have a federal cause of action in order to have federal question jurisdiction, and it finds federal questions. It says it's very relevant, and then I just don't understand how Grable is a good case for you. It says, in a garden-variety tort suit regarding federally regulated products, which commonly include reliance on federal standards, that's substantive. This is not a garden-variety tort suit, Judge Harris, particularly with regard to the claim for failure to report adverse events because it goes directly to, again, that relationship between the agency, a federal agency, and the entity it's regulating. Unlike in Merrill Dow, where you have no preemption provision whatsoever. I'm just thinking about Grable now. I'm taking your word for it. Grable is a whole new world, but Grable itself, it's talking about claims that incorporate reliance on federal standards, and it's still saying we don't want those tens of thousands of cases in federal court, and they don't need to be here because state courts know how to apply federal preemption law. So if you've got a thing about uniformity, can you take it to your local state court and talk to them about federal preemption? Well, to disaggregate the elements of Grable a little bit here, Grable does say if you have a federal standard that's being used to satisfy an element of a state law claim, that does mean that you have a federal issue necessarily raised. Then they say the other factors that you can't have, as you said, every case where that's true does not belong in federal court, and we're not arguing that it does. We're arguing that there are very unique factors at issue here to the premarket-approved medical devices, and it's those same factors that led Congress in this narrow class to put such a stringent preemption provision, and these are innovative medical devices that both have potentially high risks for patients, but at the same time potentially high benefits in light of the available medical alternatives, and Congress charged FDA with maintaining a delicate balance of regulatory objectives in this field. As the Supreme Court explained in Riegel and Bachman,  but at the same time to preserve public access and encourage innovation despite the potentially high risks of the devices, and in that narrow context, Congress recognized that state tort law could seriously disrupt that balance of objectives. That just sounds like an argument for preemption, and perhaps an excellent argument for preemption, but an argument that could be made to a state court judge, because I do think the court of Merrill, there's no reason to think the Supreme Court has ever considered, is the part where they say state courts can do preemption. State courts understand these interests, and they can apply them, and if they get it wrong, the Supreme Court reviews them, and that's where your fail-safe is, and so I understand every word you're saying about the need for uniformity in this area and deference to the FDA's regulatory regime, but I don't see how that's inconsistent with allowing state courts to decide state claims. Well, at the same time, Merrill Dow did recognize that preemption is relevant to the final two factors of the test, and preemption is relevant because it has implications for how did Congress expect this to work? What kind of balance did Congress expect there to be in this area? In Merrill Dow, in the prescription drug context, there is no express preemption whatsoever, and Merrill Dow took that as implying that Congress did indeed expect there to be significant state court actions over state court causes of action and tort liability for prescription drugs, but in the medical device field, particularly with pre-market approved medical devices, which is the only area where you have this express preemption provision applying, the implications are very different, and they are that Congress essentially did not expect there to be significant state tort actions proceeding on these devices at all, and numerous courts have recognized there is only a narrow gap in this field where state tort actions can potentially proceed, and it's because we haven't argued that there's complete preemption, but it's an extremely stringent preemption provision because of the very unique federal interest at stake here, and that means that, again, given this uniquely intensive regime, that Congress was not contemplating that garden variety tort suits were going to be proceeding, and for similar reasons, you're not going to have that disruption of federal interest. There are different interests at stake here than there are for drugs. There are different interests at stake here than there are for Class II medical devices, because you don't have the same preemption. You don't have nearly as unique, as intensive a regulation of those devices, and so you just don't have the same concerns being raised as you did in Merrill Dow for drugs or for devices that don't have to go through the premarket approval analysis. But in Regal, didn't Justice Scalia specifically say that they were not reaching the question of parallel state claims, that you have those claims? The party in that case had not brought that in a timely manner, and so the court wasn't reaching it, and if the court says there can be parallel state claims, doesn't that somewhat weigh against your argument that medical devices are somehow different and entitled to this higher standard of federal deference than pharmaceuticals and other regulated drugs? You can have parallel state law claims. There's not complete preemption in this field, but complete preemption is a separate basis for federal question jurisdiction. So reading Grable in a way that requires either a federal cause of action or complete preemption would be to read Grable out of existence entirely. That's not exactly true, because if you look at Justice Thomas' concurrence to Grable, he said in the right case that's exactly what he would do. Isn't that true? He did suggest that, but that's not what the majority held. The majority held that you do recognize federal question jurisdiction over a state law cause of action when those four factors are satisfied, and since Grable, the court has consistently adhered to that as the appropriate test, and that's also long before Grable that's been the test. For over 100 years, the court has said there is a certain class of state law claims that does raise such significant federal questions that they belong in a federal court, despite the fact that for the rest of state law claims, even if federal issues might arise around the periphery, that alone doesn't open the door, but it is also not limited just to a federal cause of action or just to the complete preemption context. This is a very different context from Merrill Dow because of the stringency of the preemption provision that you have here and because you have those federal interests at stake for these class three pre-market approved medical devices that you don't have for other devices, you don't have for drugs, you don't have in the mind run of cases where you might have tort suits brought against regulated products. When you say that this would be limited to class three devices, is that sort of under the fourth prong? Under what prong of arising under jurisdiction would you make that distinction? I think it would come in under the third and fourth prongs, and it's because the federal interests are different, and it's not just class three devices. It's a subset of class three devices, which are those that have gone through the pre-market approval process. Where you don't have the pre-market approval process, you don't have the express preemption in nearly the same way. That's the difference between regal and lower. Where you don't have pre-market approval, you don't have the same balance of federal interests at stake because the regulation is just much, much lighter. As Laura explained, you're talking about a difference between 20 hours of FDA review time and more than 1,000 hours of FDA review time, and much more intensive ongoing involvement. That goes back to the unique interests that are only raised by these class three pre-market approved devices, having to do with the fact that they're innovative and potentially risky devices, where Congress still wanted to preserve and encourage access. The thing that I wrestle with is, it just still sounds like the idea is, look, where there's a really good argument for preemption, then you can have federal court. We have said that the federal preemption question is not enough for federal question jurisdiction. But it is if the argument for preemption is really strong. That's what you're arguing. No, that's not what we're arguing. Again, I'd like to... The two things tend to collide. Sure, I'd like to disaggregate the prongs again here. Under the first two prongs, do you have a federal question that's necessarily raised and actually disputed? You don't consider preemption at all. The federal question has to be raised on the face of the complaint as part of the element of the claim, and that has to be the federal question that's in dispute. Under the final two prongs, preemption can be relevant, and Merrill Dow itself demonstrates that, because Merrill Dow looks to preemption under those final two prongs, which are really balancing standards, and it looks to them as an indication of Congress's interest in the area and how Congress anticipated the federalism balance working out. And it's very relevant to that because it shows what is the federal interest in regulating in this area and also what's going to be the impact here if the cases are allowed at federal court. And it's going to significantly lessen the impact because these claims are all preempted, as the district court correctly held. So you're not going to have huge numbers of cases proceeding in federal court because the cases can't proceed at all. And so under those final two balancing prongs, it does become quite relevant to look at how did Congress think the mix was going to work. Are there no further questions? Thank you. Thank you very much, Mr. Singh. Just a couple of quick thoughts. First, I do think, Judge Harris, your intuition is right that the other side's argument is really not so much an argument against state court adjudication as it is an argument against cases. And they say this at the end where they say, you know, all of these things are just going to be thrown out on preemption grounds regardless of the court, and that is really kind of what they're saying. They don't have a good reason why these cases need to be adjudicated in federal court as opposed to state court. What they have is an argument about why the federal agency has some interest here. But that can be addressed in either forum. Now, it can be true that when a federal agency's operations are substantially affected, like in the Grable case, where the IRS's notices are all going to be held unconstitutional, that you start to think really closely about this. But they actually have not been able to point to a single instance of where the federal government is going to have to do anything differently. The closest they come during Ms. Malley's entire presentation is she says, if a court interprets the adverse event reporting regulation to require more reporting, that could have an effect on the way the FDA does its work. That's the closest they come. Maybe there would be more reports filed, right? Let's go ahead and spot them everything they said on this. We still win. The idea is they have to show, they have a heavy burden to carry to show that there actually would be some disruption here. All they've given you is a little bit of speculation without any specifics about how this would work. Moreover, the concern they're raising arises whether it's the federal court or the state court that interprets the adverse event reporting regulation. Moreover, the adverse event reporting regulation is not one of those device-specific requirements that they highlight so much when they talk about the express preemption provision that's unique to Class III devices. You can already see how their rule will start to creep into every medical device because you have to report adverse events for all medical devices. All of this, I think, just underscores our point that there is no strong argument here for why these cases need to be adjudicated in federal court. In light of that uncertainty, remand is the only result compelled by this court's precedents. If there are any other questions, I'm more than happy to answer. Thank you.
judges: Henry F. Floyd, Pamela A. Harris, Donald C. Coggins Jr.